NEIGHLEY *v.* NEIGHLEY.

[No. 170S2. Filed February 26, 1971.]

*Robert E. Coates, Coates, Hatfield & Calkins,* of Indianapolis, for appellant.

*Richard P. Watson, Carvey, Watson & McNevin,* of Indianapolis, for appellee.

DEBRULER, J.—This is an appeal from the Marion Superior Court, Room 5, wherein that court modified a foreign decree of divorce, such modification relating to the provisions regarding custody of two minor children.

Appellant, Elsa Neighley, and appellee, John Neighley, were divorced in September, 1966. The divorce was granted to the appellant by the circuit court of Milwaukee County, Wisconsin. The divorce decree awarded the appellant permanent custody of the two minor children born of the marriage. On August 25, 1968, the appellee, John Neighley, filed a complaint to modify a foreign decree. Temporary custody of the two minor children was awarded the appellee and the cause was heard in January, 1969. Evidence was submitted by both appellant and appellee in person and through counsel. The trial court found that a change of conditions since the issuance of the Wisconsin decree warranted, in the best interest of the children, the permanent legal and physical custody of the children be changed from the appellant to the appellee and the court so ordered.

The appellant, Elsa Neighley, brings this appeal alleging that (1) the decision of the trial court is not sustained by sufficient evidence; (2) the trial court failed to give full faith and credit to the Wisconsin decree.

> Where modification is sought of a sister state decree granting custody of a minor, this Court has previously stated in *White* v. *White* (1938), 214 Ind. 405, 15 N. E. 2d 86:

> "That decree is valid in fixing the care and custody of the child under the circumstances then existing, and cannot be changed or modified by the court of a sister state, in the absence of fraud, unless and until conditions are presented to the court of the sister state which show that it would be for the best interests of the child to modify the decree." 214 Ind. at 410.

Similar holdings are found in cases dealing with modification of decrees which have been granted by courts of this State. See: *Wible* v. *Wible* (1964), 245 Ind. 235, 196 N. E. 2d 571; *Perdue* v. *Perdue* (1970), 254 Ind. 77, 257 N. E. 2d 827.

Continuity of custody is a key element in determining the best interest of the child as stated in the leading case of *Adams* v. *Purtlebaugh* (1952), 230 Ind. 269, 102 N. E. 2d 499:

> "It has been a fixed policy of the courts to arrange for custody of children of divorced parents on a basis of permanence to the extent that conditions will permit, providing of course for visiting periods for the parent not having custody. This is on the theory that a permanent residence is best for the welfare and happiness of the child." 230 Ind. at 275.

Nevertheless, this Court has stated on innumerable occasions that the welfare of the child is paramount. *Gilchrist* v. *Gilchrist* (1947), 225 Ind. 367, 75 N. E. 2d 417. That would be uppermost if the parties had sought modification in the Wisconsin court which had granted the decree and it is nonetheless of first importance here. The State is a party here, in that its interest adheres to any action concerning the care

and custody of an infant when made a subject of judicial inquiry.

We have held, therefore, that this Court is not bound by the strict rules of law which bind the parties to an action. *Weber* v. *Redding* (1928), 200 Ind. 448, 163 N. E. 269.

> Without exception, the rights of the parents yield to the welfare of the minor children. These matters rest upon sound judicial discretion rather than hard and fast rules of law.

In the case at bar, the trial judge had the parties before him. He had the opportunity to hear their testimony, observe them and weigh their evidence. In so doing the trial court concluded that the conditions and circumstances existing at the time of the Wisconsin decree had changed so as to warrant, in the interest and welfare of the children, the modification of that decree to change custody of the children from the appellant to the appellee. In *Brickley* v. *Brickley* (1965), 247 Ind. 201, 210 N. E. 2d 850, this Court states its reluctance to overturn the trial court's decision in such matters:

> "While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

> "On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." 247 Ind. at 204.

The pertinent evidence may be summarized as follows:

Appellant is an alien, a citizen of Italy. She is unable to read or write the English language. Appellant apparently has made no attempt to gain citizenship status. After the divorce

the appellant and the two minor children continued to live in Milwaukee, Wisconsin, for approximately one and a half years. In April, 1968, prior to the termination of the school year in which the eldest child, a nine-year old, was entered, the appellant removed herself and the two children to New York, taking up residence in an apartment. The rent for this apartment was paid for by one, Leslie Higgins, a man whom appellant had known in Italy, and with whom she had corresponded with while residing in Wisconsin. Appellant subsequently returned to Milwaukee for a few days leaving the minor children in the custody of Mr. Higgins and his sister-in-law. At the time of the hearing appellant did not know the name of the sister-in-law into whose home she had entrusted the care of her children. The appellant and Higgins, who was twenty-three years her senior, were married in June, 1968.

On July 15, 1968, the appellee, who had since moved to Indianapolis and remarried, arrived in New York to pick up the two minor children so that they might return to Indianapolis to spend the remainder of the summer with him. At appellant's insistence, he met her at a restaurant where she required him to sign a statement vowing that he would return the children prior to September 1, 1968, before she would permit him to take them back to Indiana. Appellee testified that he signed the statement only because the eldest child was crying hysterically because she wanted to come home with him.

Appellee and his wife and the two children then left immediately by car for Indiana. Stopping along the way to rest and change clothes they learned that the clothes in the suitcase sent by the appellant were dirty and unironed and consisted of only the barest necessities of clothing. At that time both children bore bruises and black and blue marks.

Testimony was given which evidenced that appellee, despite the visitation rights granted him in the decree, was refused permission to speak to his children by phone, and was unable to learn the address of his children. Further testimony shows

that the appellant attempted to alienate the affections of the children for their father.

Appellee testified that since his return to Indianapolis with the children he had moved from the trailer in which he and his wife were living into a three bedroom home, and that the eldest daughter is enrolled in the Indianapolis public schools.

Dr. Takuya Sato, a child psychiatrist at LaRue Carter Hospital, testified that the eldest child is extremely fearful of the appellant. He further testified that the appellee and his wife were, in his opinion, providing adequately and appropriately for the material and emotional well being of the children.

At the time this petition was filed the eldest child (age 9) filed with the trial court a request that temporary and permanent custody of her and her sister be granted to the appellee.

On the basis of the evidence submitted the trial court held that a change of conditions existed since the original decree was granted, such change warranting a change in custody for the best interests of the children.

While the evidence is not overwhelming we are not constrained to say that the trial court, being in a better position to evaluate that evidence, erred in granting the appellee's petition.

The decision of the trial court is affirmed.

Arterburn, C.J., Givan, Hunter and Prentice, JJ., concur.

NOTE.—Reported in 266 N. E. 2d 793.