In re the Marriage of Karen Lynn BAR-NETT (Young), Petitioner-Appellant,

v.

Larry Dean BARNETT,
Respondent-Appellee.

No. 1-782A194.

Court of Appeals of Indiana,
First District.

April 26, 1983.

William M. Clary, Jr., Jeffersonville, for petitioner-appellant.

David D. Nachand, Jeffersonville, for respondent-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Petitioner-appellant Karen Lynn Barnett Young (Karen) appeals a decree of the Clark Superior Court # 2 modifying the decree of dissolution and awarding the custody of the child of the parties and attorney fees to respondent-appellee Larry Dean Barnett (Larry).

Affirmed in part, and reversed in part.

## STATEMENT OF THE FACTS

The facts most favorable to support the judgment are as follows: Karen and Larry's marriage on March 4, 1972, was dissolved on June 8, 1976, and their one child, Natalie Lynn, age one at that time, was awarded to Karen's custody. Karen, who did not finish high school, worked the entire time from the dissolution until shortly before the commencement of this proceeding in March, 1982. In the last three years she was employed as a welder at Jeffboat Company, in Clark County. During that time she was wedded three additional times and lived in nine different places, not including the time she lived with her mother. Her last marriage to Ray M. Young (Mac) occurred on March 8, 1982. She had been laid off at Jeffboat, and she and Mac had moved to Gulfport, Mississippi where he found employment in a body shop earning $300 per week. At the time of the hearing Karen was unemployed, and there was no evidence of her owning any assets.

There was evidence that in the six years following the dissolution she left the child with undesirable baby sitters, consisting sometimes of older boys who were foster children of her mother. These boys had criminal and anti-social tendencies. The places in which she lived with the child were substandard, consisting of one bedroom apartments, trailers, and homes which were occupied by stepfathers and boy friends from time to time. There was evidence of Karen's lack of modesty, sometimes appearing in the doorway nude or semi-nude when Larry arrived for the child on visitation. There was evidence that Karen's fourth husband was intemperate in his drinking habits, and was, at times, disposed to violence. He had on occasions beaten Karen, once with a full beer can causing an injury which required treatment in a hospital emergency room. He and Karen had separated and gone back together. He had beaten and abused his first wife and a son, and had shot a man. On this latter episode he was tried on a criminal charge, but was acquitted by a jury. The

victim of that incident testified at the trial and related that Mac, for undisclosed reasons, was called to the scene of a drunken fight at a party. Mac appeared with a shotgun and, as one of the participants fled, he leveled the shotgun at him but was prevented from shooting by the intervention of the victim, who was wounded in the struggle. Mac, along with others, was even expelled from the Sportsdrome, a car race track, for drunkenness and boisterous conduct. There was evidence that he was in arrears on his support obligations to children of a prior marriage, and his work record was less than satisfactory.

Natalie's teacher described the child as fearful, lacking in confidence, not well adjusted, and given to crying spells.

There was evidence that Larry was a Purdue University Engineering graduate, and was employed as a senior marine draftsman at Jeffboat. He had remarried, acquired a $55,000 home, and his second wife was a nurse employed by a surgeon. The marriage seemed stable, and Larry and the new wife had a good rapport with the child.

The issue at trial was bitterly contested, and Karen disputed much of the above evidence, or attempted to qualify it.

The trial court, on April 19, 1982, found that there had been a change of circumstances of the parties and that the change was "of such a substantial and continuing nature as to make the terms of the last order of the court unreasonable with regards to custody and visitation of the parties' minor child, Natalie Lynn Barnett," and awarded custody of the child to Larry. Later, on June 25, 1982, after Karen had indicated that she would appeal, Larry filed his verified petition to require Karen to pay his appellate attorney fees, alleging that he believed Karen had instituted the appeal purely for malicious purposes. He requested attorney fees for matters occurring at trial level and appellate level. Larry had not previously requested attorney fees and the decree modifying did not so award them for the trial. Without conducting an evidentiary hearing, the trial court granted

"attorney fees on appeal" in the amount of $2,000.

## ISSUES

The issues on appeal are:

I. The sufficiency of the evidence; and

II. Award of attorney fees.

## DISCUSSION AND DECISION

*Issue I. Custody*

 Ind.Code 31–1–11.5–22(d) permits a trial court to modify custody provisions only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable. The trial court's determination that conditions justify modification rests in its sound discretion, and upon appeal the appellant must demonstrate that the trial court abused its discretion. *Campbell v. Campbell,* (1979) Ind.App., 396 N.E.2d 142. We will not reweigh the evidence, adjudge the credibility of the witness, nor substitute our judgment for that of the trial court. *D.H. v. J.H.,* (1981) Ind.App., 418 N.E.2d 286. The standard of review was set forth in *Whitman v. Whitman,* (1980) Ind.App., 405 N.E.2d 608, 610–11:

"When reviewing the trial court's discretionary determination, this Court examines the evidence to determine if there is any evidence supporting the trial court's determination; and it is only when the trial court's determination is 'against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be draw[n] therefrom' that we will reverse. *Marshall v. Reeves,* (1974) 262 Ind. 107, at 115, 311 N.E.2d 807, at 812. The overlying concern in any custody determination is the best interest of the child. *Franklin v. Franklin,* (1976) Ind.App., [169 Ind.App. 537], 349 N.E.2d 210. When initially determining the custodian of a child in a dissolution, IC 31–1–11.5–21(a) [Burns Code Ed., Supp.1979] requires the court make its determination 'in accordance with the best interests of the child.' At that point, there is no

presumption favoring either parent, the statute requiring certain factors to be considered by the trial court, all focusing on the child's welfare. Once the initial determination has been made pursuant to these guidelines, a petition seeking modification must establish a substantial and continuing change in the original conditions necessitating the modification. IC 31–1–11.5–22(d). Such strict showing promotes the stability of the child, therefore ensuring the child's best interests will be paramount." (Footnote omitted.)

The Supreme Court, in *Poret v. Martin,* (1982) Ind., 434 N.E.2d 885, 888, further refined the standard of proof and factors amounting to a substantial and continuing change of circumstances:

"In the case before us, the Court of Appeals predicated its holding upon Ind. Code § 31–1–11.5–22(d) (Burns Code Ed.) which allows the trial court to modify custody provisions only upon 'a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable.' The statute is nothing more than a codification of case law of this jurisdiction. The words 'substantial and continuing,' with reference to the change of condition are merely a rephrasing of our case law requirement that it be of a 'decisive nature'; and the requirement that it 'make the existing order unreasonable' is no different than the case law requirement that the change be 'necessary for the welfare of the child.'

Neither has there been any change with respect to the appellate standard of review. It is, therefore, for the trial judge to determine whether the change has been so substantial and continuing as to make the existing order unreasonable; and upon an affirmative finding, our function is merely to determine whether or not there was substantial probative evidence supportive of that conclusion. If so, it cannot be said that the trial judge abused his discretion.

Although a change in a custody order must be necessitated by a substantial change in conditions since the order was made, it does not follow that there must be such a change that it compels the change in and of itself. The change, if its effect upon the child is to be properly assessed, must be judged in the context of the whole environment. It is, after all, the effect upon the child that renders the change substantial or inconsequential; and a change that might be regarded as slight or inconsequential in one case might be catastrophic in another. The trial judge, therefore, must consider all circumstances, including those previously weighed, in order to determine, in context, the substance of the change giving rise to the review."

■ Clearly, the evidence shows that a substantial and continuing change of circumstances occurred in the lives of both Karen and Larry. His lifestyle has become increasingly stable while her lifestyle has become increasingly unstable. The best interests of Natalie do not require that she be subjected to a parade of stepfathers, the last of which possesses a propensity for violence. We are of the opinion that the trial court did not abuse its discretion in changing the custody to Larry.

*Issue II. Attorney fees*

■ Larry's petition for appellate attorney fees was not predicated upon his inability to pay, or upon Karen's superior ability to pay, but upon the basis that the appeal was malicious. The trial court's granting of the petition without explanation amounted to granting it on the basis asserted by Larry. Larry cites no authority which permits a trial court to prejudge the merits of an appeal and penalize the appellant with a prior award of attorney fees because the court thinks the appeal is without merit or malicious. Furthermore, we know of none. Ind.Rules of Procedure, Appellate Rule 15(G) touches this subject and provides:

"If the court on appeal affirms the judgment, damages may be assessed in favor of the appellee not exceeding ten per cent (10%) upon the judgment, in money judgments, and in other cases in the discretion

of the court; and the court shall remand such cause for execution."

Even in suits for malicious prosecution and abuse of process, a favorable outcome of the prior action is a prerequisite to maintaining the suit. We hold that the trial court abused its discretion in awarding appellate fees solely on the basis that the appeal was malicious.

██ The record does not reflect that the court stated its reason for the award of attorney fees, though it was based wholly upon Larry's petition and the response. But assuming, *arguendo,* that the court had in mind reasons other than malice in awarding appellate fees, he still committed error in not conducting an evidentiary hearing.

 Under Ind.Code 31–1–11.5–16, the trial court may award attorney fees at any stage of the dissolution proceeding including appellate fees. Suit money is awarded *pendente lite* to insure that a party receiving the benefit is able to prepare an efficient case and have a fair and impartial trial. *Svetich v. Svetich,* (1981) Ind.App., 425 N.E.2d 191. A wife can be ordered to pay a husband's attorney fees where there is a disparity of resources. *MacCauley v. Funk,* (1977) 172 Ind.App. 66, 359 N.E.2d 611. However, the trial court must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and such other factors as bear on the reasonableness of the award. *Lipner v. Lipner,* (1971) 256 Ind. 151, 267 N.E.2d 393; *Wendorf v. Wendorf,* (1977) 174 Ind.App. 172, 366 N.E.2d 703; *DeLong v. DeLong,* (1974) 161 Ind.App. 275, 315 N.E.2d 412; *Brown v. Brown,* (1973) 157 Ind.App. 672, 301 N.E.2d 400. Based upon all the circumstances the trial court has broad discretion in awarding attorney fees. *Wendorf, supra.*

██ The only evidence in the original record discloses that Karen was unemployed without assets, and Larry had good employment and substantial assets. The court conducted no evidentiary hearing and there is no indication that he considered the economic circumstances of the parties, or could

have, under the state of the record. Such is an abuse of discretion.

For the above reasons the cause is reversed as to Count II, and the trial court is ordered to vacate the award of attorney fees. The cause is in all other things affirmed. The costs are ordered to be paid one half by each party.

Judgment affirmed in part; reversed in part.

ROBERTSON, P.J., and RATLIFF, J., concur.