Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 19 2012, 8:55 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TODD A. WOODMANSEE**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**JOHN P. WILSON**
Wilson, Green and Cecere
Greenwood, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE PATERNITY OF: J.G., | ) |
| | ) |
| R.W., | ) |
| | ) |
| Appellant-Respondent, | ) |
| | ) |
| vs. | ) No. 49A05-1109-JP-537 |
| | ) |
| D.G., | ) |
| | ) |
| Appellee-Petitioner. | ) |

APPEAL FROM THE MARION CIRCUIT COURT
The Honorable Christine Douglas, Pro Tem
Cause No. 49C01-0201-JP-159

**July 19, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

R.W. ("Mother") and D.G. ("Father") are the parents of J.G. Through paternity proceedings, Mother was granted sole custody of J.G. and Father was granted visitation on a specific schedule. In 2011, Father filed a petition for modification of visitation. In response, Mother filed a petition requesting Father's visitation be suspended or changed to supervised visitation. Mother appeals the trial court's order on these motions, raising two issues for our review: whether the trial court erred in modifying Father's parenting time and including an order that Father be allowed to make up parenting time Mother refused to allow him to exercise for several months preceding the hearing, and whether the trial court erred in ordering her to pay a portion of Father's attorney fees. Concluding the trial court did not abuse its discretion, we affirm.

## Facts and Procedural History

J.G., a special needs child, was born out of wedlock to Mother and Father in 2001. In January 2003, a paternity proceeding established Father's paternity of J.G., awarded sole physical custody of J.G. to Mother, and outlined visitation for Father to be transitioned over several four week periods from visitation at Mother's home under Mother's supervision to unsupervised visitation at Father's home. During this time, Mother was to show Father how to perform all necessary medical procedures on the child. Various review hearings altered the visitation schedule slightly until ultimately, in September 2003, the following schedule was ordered indefinitely: Father was to have parenting for three hours once during the week, five hours on alternating Saturdays, and five hours every Sunday, all outside Mother's

presence except for one hour when Mother was to explain to Father any updated medical care the child required. The parties and their counsel were to thereafter work toward phasing in increased parenting time for Father.

By 2010, Father's visitation with J.G. had apparently increased by agreement of the parties to three hours once during the week, eight hours on alternating Saturdays, eight hours every Sunday, and at least one overnight per month, in addition to several hours on holidays. Father cared for J.G. on his own during his parenting time. However, on December 22, 2010, when Mother picked J.G. up from Father's house, the parties argued over Christmas visitation. Mother alleges Father yelled and prevented her and J.G. from leaving the house; Father contends he only requested that they discuss the matter and briefly stood in the doorway in an effort to engage Mother in further discussion. Following this incident, Mother filed a police report[1] and thereafter only wanted to allow Father to have visitation if Father's dad was also present. Mother also sought an order of protection against Father because of the December 2010 incident, which was denied. Father was able to visit with J.G. once in May 2011 under Mother's conditions.

In January 2011, Father filed his petition for modification of parenting time, requesting that his future parenting time be pursuant to the Parenting Time Guidelines (the "Guidelines"). In February 2011, Mother filed a petition to suspend or establish supervised visitation, acknowledging Father's increased parenting time since the September 2003 order, but alleging that because of the December 2010 incident, Father's visitation should be

---

[1] The police referred the matter to the local department of child services but did not take further action; the department of child services investigated but found the report unsubstantiated.

suspended or changed to supervised visitation. Immediately following a hearing in August 2011, the trial court entered an order which found that Father had been regularly participating in parenting time with J.G. since paternity was established but that Mother had refused to allow Father to have parenting time since May 2011. The trial court also found that Mother had pursued the protective order without "the necessary facts to secure such for the sole purpose of interfering w[ith] dad's parenting time." Appellant's Appendix at 9. The trial court ordered that Father have parenting time pursuant to the Guidelines in all respects, and further ordered that Father have "make-up parenting time" for the time Mother had refused parenting time, to include Labor Day weekend 2011, three hours on Halloween 2011, Thanksgiving 2011 from Wednesday to Sunday, and December 24 through December 26, 2011. Id. at 10. The trial court also ordered Mother to pay $750 to Father's attorney. Mother now appeals.

## Discussion and Decision

### I. Parenting Time

Indiana has long recognized that the right of parents to spend time with their children is a precious and important privilege that should be enjoyed by noncustodial parents. Lasater v. Lasater, 809 N.E.2d 380, 400 (Ind. Ct. App. 2004). Accordingly, a noncustodial parent in a paternity action is generally entitled to reasonable parenting time rights. See Ind. Code § 31-14-14-1(a). In all parenting time issues, however, courts are required to give foremost consideration to the best interest of the child. Tamasy v. Kovacs, 929 N.E.2d 820, 837 (Ind. Ct. App. 2010); see also Ind. Code § 31-14-14-2 ("The court may modify an order granting or

4

denying parenting time rights whenever modification would serve the best interests of the child.").

A decision modifying parenting time is reviewed for an abuse of discretion. Miller v. Carpenter, 965 N.E.2d 104, 108 (Ind. Ct. App. 2012). When reviewing the trial court's decision, we neither reweigh the evidence nor reexamine the credibility of the witnesses. In re Paternity of W.C., 952 N.E.2d 810, 816 (Ind. Ct. App. 2011). Reversal is appropriate only upon a showing of an abuse of that discretion. Walker v. Nelson, 911 N.E.2d 124, 130 (Ind. Ct. App. 2009). No abuse of discretion occurs if there is a rational basis supporting the trial court's determination. Gomez v. Gomez, 887 N.E.2d 977, 983 (Ind. Ct. App. 2008).

Mother specifically challenges the trial court's finding that she refused Father parenting time and the trial court's order that Father have "make-up parenting time" for the missed visitation. See Appellant's App. at 10. She alleges the trial court treated Father's petition like a contempt petition and exceeded its authority in awarding Father more than he requested. We do not agree that the trial court's order for "make-up parenting time" was a punishment for a finding that Mother was in contempt of a court order or that it gave Father more than he had requested. Rather, Father requested modification of the existing order, and the trial court heard evidence that related to appropriate parenting time, including testimony regarding the parties' abilities to care for their special needs child, the parenting time the parties had been exercising for many years without court intervention, and both the incident in December 2010 and the aftermath thereof. The trial court made a determination that both parties had been providing appropriate care for J.G., that Father's version of the events

occurring in December 2010 was more credible, and that Mother's reaction to those events in placing restrictions or conditions on Father's visitation was unreasonable.

The trial court's order that Father be granted parenting time in accordance with the Guidelines is not an abuse of discretion, as the guidelines are presumed applicable in all child custody situations, including paternity actions. See Ind. Parenting Time Guidelines, Scope of Application. To the extent the few days of extra parenting time the trial court ordered Father to have in 2011 is a deviation from the guidelines, the trial court adequately explained the reason for the deviation. See Ind. Parenting Time Guidelines, Scope of Application, § 2 ("Any deviation from these Guidelines by either the parties or the court must be accompanied by a written explanation why the deviation is necessary or appropriate in the case."); see also Commentary to § 2 ("The written explanation need not be as formal as Findings of Fact and Conclusions of Law; however, it must state the reason(s) for the deviation.").

## II. Attorney Fees Order

Mother also contends the trial court abused its discretion in ordering her to pay Father's attorney fees in general, and particularly in doing so without holding a hearing on the parties' financial situations.

As Mother acknowledges in her brief, Indiana Code section 31-17-4-3 provides the authority for a trial court to order one party to pay attorney fees of the other in any action to modify a parenting time order. In determining whether to make such an award, the trial court is to consider, among other factors, whether the petitioner substantially prevailed and whether the respondent knowingly or intentionally violated an order granting parenting time

6

rights, and whether the respondent substantially prevailed and the action was frivolous or vexatious. Ind. Code § 31-17-4-3(b). The Guidelines also provide for an award of attorney fees under similar circumstances. See Parenting Time Guidelines Sec. 1(E)(6)(D) ("In any court action to enforce an order granting or denying parenting time, a court may award reasonable attorney fees and expenses of litigation. A court may consider whether the parent seeking attorney fees substantially prevailed and whether the parent violating the order did so knowingly or intentionally. A court can also award attorney fees and expenses against a parent who pursues a frivolous or vexatious court action."). Trial courts enjoy broad discretion in awarding attorney fees, and reversal is proper only where the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. Carrasco v. Grubb, 824 N.E.2d 705, 712 (Ind. Ct. App. 2005), trans. denied.

Here, Father, as petitioner for modification of parenting time pursuant to the Guidelines, substantially prevailed as to his petition, and the trial court found that Mother, as respondent, had intentionally violated the earlier order by denying Father specific unsupervised visitation without reasonable cause. In addition, Father, as respondent to Mother's petition to suspend visitation or order supervised visitation, substantially prevailed on that petition, as well, and the trial court found that Mother had no basis for requesting such relief. See Ind. Code § 31-14-14-1(a) (stating that a non-custodial parent in a paternity proceeding is entitled to reasonable parenting time unless the court finds that the parenting time would endanger the child's physical health and well-being or significantly impair the child's emotional development); In re W.C., 952 N.E.2d at 816 (noting that a party who seeks

7

to restrict parenting time rights bears the burden of proving by a preponderance of the evidence that such a restriction is justified). Moreover, Father filed his petition for modification only after Mother began to place restrictions on the parenting time he had been enjoying with J.G. for several years. Under these circumstances, we cannot say the trial court abused its discretion by ordering Mother to pay Father's attorney fees.

As to Mother's contention that the trial court erred in ordering her to pay Father's attorney fees without first holding a hearing to inquire into the financial resources of the parties, we note that the ability to pay is just one of the factors the trial court might consider in determining whether to make an award pursuant to Indiana Code section 31-17-4-3. See Francis v. Francis, 654 N.E.2d 4, 7 (Ind. Ct. App. 1995) ("In making such an award, the court must consider all the circumstances before it."), trans. denied. Although the trial court did not make any specific inquires into Mother's ability to pay Father's attorney fees of $750, there is a child support order in effect based upon financial information provided by the parties. We assume the trial court appropriately considered the parties' economic circumstances when awarding attorney fees. See MacIntosh v. MacIntosh, 749 N.E.2d 626, 632 (Ind. Ct. App. 2001), trans. denied. The award of attorney fees was not an abuse of the trial court's discretion.

Conclusion

The trial court did not abuse its discretion in awarding, as part of its modification of parenting time, "make-up time" for parenting time Father missed due to Mother's

8

restrictions.  Further, the trial court did not abuse its discretion in ordering Mother to pay Father's attorney fees.  The judgment of the trial court is affirmed.

Affirmed.

BAILEY, J., and MATHIAS, J., concur.